UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

RYAN G. CAINE,

                Plaintiff,

v.                                         Case No. 24-cv-822-pp

YVONNE EKONOMOU, *et al.*,

                Defendants.

---

**ORDER GRANTING STATE DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON EXHAUSTION GROUNDS (DKT. NO. 23) AND DENYING DEFENDANT EKONOMOU'S MOTION FOR SUMMARY JUDGMENT ON EXHAUSTION GROUNDS (DKT. NO. 27)**

---

Plaintiff Ryan G. Caine, who previously was incarcerated and is representing himself, filed a complaint under 42 U.S.C. §1983. The court allowed the plaintiff to proceed on claims that the defendants violated his rights under federal and state law when he was confined at Dodge Correctional Institution. Dkt. No. 9. Defendants Lana Hartzheim and Jenney Caylor ("State Defendants") have filed a motion for partial summary judgment on exhaustion grounds, dkt. no. 23, and defendant Yvonne Ekonomou has filed a motion for summary judgment on exhaustion grounds, dkt. no. 27. This decision grants the State Defendants' motion, denies defendant Ekonomou's motion and sets a deadline for the parties to file motions for summary judgment on the merits.

**I. Facts[1]**

    **A.**    <u>Plaintiff's Claims</u>

The court screened the complaint under 28 U.S.C. §1915A and allowed the plaintiff to proceed on the following claims: (1) an Eighth Amendment

---

[1] The court includes only material, properly supported facts in this section. <u>See</u> Fed. R. Civ. P. 56(c).

1

excessive force claim against defendant Hartzheim for allegedly unnecessarily tasering the plaintiff while he lay in his cell and for subsequently yanking on a tether causing the plaintiff to flip over and land on his head; (2) a Wisconsin state law negligence claim against Hartzheim for allegedly refusing to get the plaintiff a wheelchair when he couldn't walk, not calling a mental health professional to assist in calming him and not calling for mental and medical help after the plaintiff injured his head; (3) Eighth Amendment medical care and Wisconsin state law negligence claims against defendant Caylor for allegedly not stopping the plaintiff's transfer to Redgranite Correctional Institution; and (3) an Eighth Amendment medical care claim against defendant Ekonomou for allegedly abruptly stopping the plaintiff's medication. Dkt. No. 9 at 7-9.

      B.    <u>Plaintiff's Claim Against Ekonomou</u>

The plaintiff was incarcerated at Dodge Correctional Institution from March 13 to May 24, 2023. Dkt. No. 29 at ¶5. The plaintiff alleges that Ekonomou acted with deliberate indifference by abruptly taking him off his psych medication, Wellbutrin, on May 2, 2023, causing him to experience anxiety, an altered mental state, confusion, depression and loss of motor skills. <u>Id.</u> at ¶2. The plaintiff was a patient of Ekonomou's from May 2 to May 23, 2023. <u>Id.</u> at ¶6. After May 23, 2023, Ekonomou no longer was involved in the plaintiff's psychiatric care and treatment. <u>Id.</u> at ¶7.

On May 24, 2023, the plaintiff was transferred to Redgranite Correctional Institution. <u>Id.</u> at ¶8. While housed at Redgranite, the plaintiff filed two inmate complaints potentially related to his allegations against Ekonomou: RGCI-2023-8237 and RGCI-2023-8366. <u>Id.</u> at ¶12.

1.  *Complaint RGCI-2023-8237*

Redgranite staff received complaint RGCI-2023-8237 on June 5, 2023. Id. at ¶13. According to the complaint, the plaintiff was complaining about being taken off his Wellbutrin medication. Dkt. No. 26-2 at 17. In the body of the complaint, the plaintiff stated in part that he was prescribed Wellbutrin before his incarceration at Dodge and that when he "was admitted into [D]odge from March 13, 2023 to May 2, 2023[, he] was on this medication an[d] abruptly taken off of this medication[.]" Id.

The "ICE [Institution Complaint Examiner] Report" regarding the complaint states that the complaint concerns the discontinuation of the plaintiff's Wellbutrin medication. Id. at 2. The "Summary of Facts" section of the ICE Report states in part:

> Because [the plaintiff] arrived at [Dodge] on this medication, it continued until he was seen for an initial psychiatric evaluation, which occurred on 5/2/23. The provider, Dr. Ekonomou, explained to him that this medication would not be able to be continued. She noted it was not in his best interest to be on that medication given his history of substance abuse.

Id. The ICE dismissed the complaint. Id. Following the dismissal of the complaint, the plaintiff submitted an appeal. Id. at 4. The corrections complaint examiner recommended that the "matter is returned for the appropriate RA-psychiatry, to review the complaint." Id. at 6. The Office of Secretary Decision states that the Secretary "is returning this complaint to the institution for priority investigation." Id. The complaint was reviewed again and dismissed. Id. at 9. On appeal, the dismissal was upheld by the Office of the Secretary. Id. at 12.

3

### 2. *Complaint RGCI-2023-8366*

Redgranite staff received complaint RGCI-2023-8366 on June 7, 2023. Dkt. No. 29 at ¶16. The complaint states that May 23, 2023 was the date of the incident, but the body of the complaint discusses the discontinuation of the plaintiff's Wellbutrin (bupropion) prescription on May 2, 2023. Id. The complaint was rejected as untimely under DOC 310.07(2). Id. at ¶17. The rejection was upheld on appeal. Dkt. No. 26-3 at 5.

### C. Plaintiff's Claims Against State Defendants

The plaintiff alleges in the complaint that on May 20, 2023, while confined at Dodge, as Hartzheim and three officers escorted him to the health services unit (HSU), he could not walk; he alleges that Hartzheim refused to get him help or a wheelchair and instead punitively had him placed in a restraint chair. Dkt. No. 1 at ¶¶28-40. When they reached the HSU, the plaintiff allegedly was traumatized and could not answer the nurse's questions, so he returned to his cell via the restraint chair. Id. at ¶¶45, 48. The plaintiff states that when they reached his cell, he could not stand despite orders to do so and that Hartzheim tasered him while he lay in his cell. Id. at ¶¶49-54. As Hartzheim was leaving the cell and closing the door, she allegedly yanked on a tether which caused the plaintiff to flip in the air and land on his head. Id. at ¶¶57-58. Hartzheim allegedly refused to obtain mental health or medical care for the plaintiff. Id. at ¶¶59, 61. The plaintiff alleges that despite not being mentally able to travel, he was transferred to Redgranite Correctional Institution on May 24, 2023. Id. at ¶63. He alleges that Caylor could have stopped the transfer, but she failed to do so. Id. at ¶64.

The plaintiff submitted five inmate complaints with at least passing relevance to his claims in this case. Dkt. No. 25 at ¶2. Two of the five

4

complaints—RGCI-2023-8237 and RGCI-2023-8366, which the court discussed above—involve the plaintiff's allegations that his medication was stopped. The court will address the remaining three complaints below. The plaintiff did not submit any inmate complaint in which he complained about his transfer to another prison (which is his claim against Caylor). Id. at ¶6.

### 1. Complaint RGCI-2023-8367

In complaint RGCI-2023-8367, the plaintiff complained that Hartzheim used excessive force by tasering him. Dkt. No. 25 at ¶4. That grievance makes no mention of Hartzheim yanking on a tether or causing a head injury. Id. at ¶5. The plaintiff fully exhausted this claim. Dkt. No. 26-4 at 9.

### 2. Complaints RGCI-2023-9520 and RGCI-2023-12801

In the fourth and fifth complaints—RGCI-2023-9520 and RGCI-2023-12801—the plaintiff complains of incidents that occurred after he transferred to Redgranite. In RGCI-2023-9520, the plaintiff complains that Dr. Gilbert and Dr. Steffanides put him through medication withdrawal on June 2, 2023. Dkt. No. 26-5 at 11. In RGCI-2023-12801, submitted on August 28, 2023, the plaintiff complains about not receiving adequate mental health care since he arrived at Redgranite. Dkt. No. 26-6 at 11.

## II. Analysis

### A. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Ames v. Home Depot U.S.A., Inc., 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable

5

substantive law that "might affect the outcome of the suit." See Anderson, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

A party asserting that a fact cannot be, or is, genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

B. Discussion

The State Defendants contend that the plaintiff did not exhaust his administrative remedies regarding his claims that Caylor did not stop the plaintiff's transfer to Redgranite and that Hartzheim yanked on a tether tied to the plaintiff causing him to hit his head.[2] Dkt. No. 24 at 1. They contend that the court should dismiss those claims. Id. at 1-2. Defendant Ekonomou contends that the plaintiff failed to exhaust his administrative remedies related to his Eighth Amendment claim that Ekonomou discontinued the plaintiff's prescription medication at Dodge on May 2, 2023. Dkt. No. 28 at 7.

---

[2] The State Defendants acknowledge that the plaintiff exhausted his administrative remedies for his claim that Hartzheim unnecessarily used a taser on him. Dkt. No. 24 at 1-2.

6

Case 2:24-cv-00822-PP   Filed 01/23/26   Page 6 of 12   Document 41

The plaintiff filed a response to the State Defendants' motion for partial summary judgment, stating that he opposes their motion. Dkt. No. 32 at 1. The plaintiff says that the defendants acknowledge that he filed complaints about issues he raised in this case. Id. According to the plaintiff, he exhausted his administrative remedies. Id. at 2. The plaintiff did not file a separate response to Ekonomou's motion for summary judgment.

The Prison Litigation Reform Act (PLRA) states that an incarcerated individual cannot assert a cause of action under federal law "until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a); see also Woodford v. Ngo, 548 U.S. 81, 93 (2006) (holding that the PLRA requires proper exhaustion of administrative remedies). Wisconsin law imposes a similar requirement on incarcerated individuals' state-law claims. Wis. Stat. §801.02(7)(b). Courts can take guidance from federal courts' interpretation of the federal PLRA in interpreting the Wisconsin PLRA's exhaustion requirement. See Taylor v. Anderson, Case No. 19-cv-300, 2020 WL 5303844, at *1 n.1 (W.D. Wis. Sept. 4, 2020) (citing State ex rel. Hensley v. Endicott, 245 Wis. 2d 607, 618 (Wis. 2001)).

Exhaustion requires that an incarcerated person comply with the rules applicable to the grievance process at his institution. Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002). This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). The objective of §1997e(a) is to permit the institution's "administrative process to run its course before litigation begins." Dole v. Chandler, 438 F.3d 804, 809 (7th Cir. 2006) (quoting Cannon v. Washington, 418 F.3d 714, 719 (7th Cir. 2005)); see also Kaba v. Stepp, 458

7

F.3d 678, 684 (7th Cir. 2006). The Seventh Circuit applies a "strict compliance approach to exhaustion" and expects incarcerated individuals to adhere to "the specific procedures and deadlines" established by the institution's policy. Dole, 438 F.3d at 809; see also Hernandez v. Dart, 814 F.3d 836, 842 (7th Cir. 2016) (citations omitted). Because exhaustion is an affirmative defense, the defendants bear the burden of proving that the plaintiff failed to exhaust. Pavey v. Conley, 544 F.3d 739, 740-41 (7th Cir. 2008) (citing Jones v. Bock, 549 U.S. 199, 216 (2007)).

The Inmate Complaint Review System (ICRS) within the Wisconsin prisons is the administrative remedy available to incarcerated individuals with complaints about prison conditions or the actions of prison officials. Wis. Admin. Code §DOC 310.01(2)(a). Before an incarcerated person may commence a civil action, he must exhaust all administrative remedies that the Department of Corrections has promulgated by rule. Wis. Admin. Code §DOC 310.05. The ICRS is available for incarcerated individuals to "raise issues regarding policies, living conditions, or employee actions that personally affect the inmate or institution environment." Wis. Admin. Code §DOC 310.06(1).

Under the ICRS, an incarcerated person must file a complaint with the institution complaint examiner (ICE) within fourteen days after the occurrence giving rise to the complaint. Wis. Admin. Code §DOC 310.07(2). Complaints submitted later than fourteen days after the event may be accepted for good cause. Id. The ICE shall accept, return or reject a complaint. Wis. Admin. Code §DOC 310.10(2). After reviewing and acknowledging each complaint in writing, the ICE either rejects the complaint or sends a recommendation to the "appropriate reviewing authority," who may recommend that the complaint be affirmed or dismissed in whole or in part. Wis. Admin. Code §§DOC 310.10(9)

8

& 310.10(12). Within fourteen days after the date of the decision, an incarcerated individual may appeal the reviewing authority decision to the corrections complaint examiner (CCE). Wis. Admin. Code §DOC 310.09(1). The CCE reviews the appeal and makes a recommendation to the secretary of the Department of Corrections. Wis. Admin. Code §DOC 310.12(9). The secretary affirms or dismisses the CCE's recommendation, or returns the appeal to the CCE for further investigation. Wis. Admin. Code §DOC 310.13(2).

It is undisputed that the plaintiff submitted five inmate complaints arguably relevant to his claims in this case. None of those inmate complaints raised the issue of the plaintiff's claim that Hartzheim used excessive force by yanking on a tether attached to the plaintiff causing injury to him. Nor did the plaintiff submit an inmate complaint regarding his allegations that Caylor failed to prevent his transfer to Redgranite. That means that the plaintiff has not exhausted administrative remedies regarding his Eighth Amendment claim against Hartzheim for yanking on the tether or his Eighth Amendment claim against Caylor for not stopping his transfer to Redgranite.

It is also undisputed that the plaintiff did not file any inmate complaints related to his state law claims against Hartzheim and Caylor, as required under the Wisconsin PLRA. See Wis. Stat. §801.02(7)(b). The plaintiff's state law claim against Caylor is based on the same allegations as his federal claim against her. His state law claim against Hartzheim is based on allegations that Hartzheim refused to get the plaintiff a wheelchair when the plaintiff couldn't walk, didn't call a mental health professional and didn't get mental and

9

medical help for the plaintiff after he injured his head. The court will dismiss the plaintiff's state law claims for failure to exhaust.³

Ekonomou contends that the plaintiff did not file an inmate complaint regarding his claim against her. But complaint RGCI-2023-8237 raises the issue of Ekonomou stopping the plaintiff's Wellbutrin on May 2, 2023, and the ICE report shows that the institution complaint examiner addressed that issue. On appeal, the secretary's office even returned the complaint to the institution complaint examiner for a priority investigation into Ekonomou's decision to stop the Wellbutrin medication that the plaintiff was prescribed when he entered Dodge. Ekonomou has not met her burden of proving that the plaintiff failed to exhaust his administrative remedies. Because the plaintiff has fully exhausted his available administrative remedies regarding this claim, the court will deny Ekonomou's motion for summary judgment on exhaustion grounds.

In summary: The court will grant the State Defendants' motion for partial summary judgment on exhaustion grounds. The court will dismiss without prejudice the plaintiff's Eighth Amendment excessive force claim against Hartzheim based on allegations that she yanked on the tether causing him injury, his Eighth Amendment claim against Caylor based on allegations that she did not prevent his transfer to Redgranite and his state law claims against Hartzheim and Caylor. See Ford v. Johnson, 362 F.3d 395, 401 (7th Cir. 2004).

---

³ The State Defendants appear to contend that the plaintiff's Eighth Amendment excessive force claim based on the tasering also included a negligence claim. Dkt. No. 24 at 1-2. But as the court has described above and as it did in the screening order, the plaintiff's negligence claim against Hartzheim is based on other alleged conduct for which the plaintiff did not submit any inmate complaints—not on his claim about the taser. This means that the plaintiff's surviving excessive force claim against Hartzheim does not include a negligence claim.

The court will deny Ekonomou's motion for summary judgment on exhaustion grounds.

The following claims remain: The plaintiff's Eighth Amendment claim against Ekonomou for allegedly abruptly stopping his Wellbutrin medication and the plaintiff's Eighth Amendment claim against Hartzheim for allegedly unnecessarily tasering him while he lay in his cell. The court previously stayed the deadline for the parties to file motions for summary judgment on the merits until forty-five days after the court issued a decision on the defendants' motion for summary judgment on exhaustion grounds. Dkt. No. 40. The court will set below a new deadline by which the parties must file motions for summary judgment on the merits.

### III. Conclusion

The court **GRANTS** the State Defendants' motion for partial summary judgment for failure to exhaust administrative remedies. Dkt. No. 23. The court **ORDERS** that the plaintiff's Eighth Amendment claim against Caylor, his Eighth Amendment claim against Hartzheim premised on use of the tether, and his Wisconsin state-law negligence claims against Hartzheim and Caylor are **DISMISSED WITHOUT PREJUDICE**.

The court **DISMISSES** defendant Caylor.

The court **DENIES** defendant Ekonomou's motion for summary judgment on exhaustion grounds. Dkt. No. 27.

The plaintiff's remaining claims are: (1) an Eighth Amendment excessive force claim against Hartzheim based on unnecessarily tasering the plaintiff, and (2) an Eighth Amendment medical care claim against Ekonomou based on stopping his Wellbutrin medication.

The court **ORDERS** that the deadline for the parties to file motions for summary judgment on the merits of the plaintiff's remaining claims is the end of the day on **March 6, 2026**.

Dated in Milwaukee, Wisconsin this 23rd day of January, 2026.

BY THE COURT:

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**